## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Samuel Zean, Eunice Zean,

                            Plaintiffs,

vs.

Wells Fargo Bank, N.A., Experian
Information Solutions, Inc., Equifax
Information Services, LLC, Trans Union,
LLC,

                          Defendants.

Case No. 17-cv-03817 (JNE/HB)

**Wells Fargo's Memorandum of Law in
Support of Motion to Dismiss Counts
2, 3, 4, 5, 7, 8, 15, and 16**

## Introduction

A dispute over a few thousand dollars has spawned an 18-count, 274-paragraph Amended Complaint. If that seems like overkill, it's because it is. Wells Fargo Bank, N.A. believes that all of the claims are meritless, but fully half the claims fail at the pleading stage either because plaintiffs lack standing to pursue them, they fail as a matter of law, or they fail because plaintiffs have not pleaded sufficient facts under *Iqbal*, *Twombly*, or Rule 9(b) to support them. Counts 2-5, 7-8, and 15-16 of the Amended Complaint fail to state viable claims, so the Court should dismiss them with prejudice under Fed. R. Civ. P. 12(b)(6).

## Facts

As it must on a motion to dismiss, Wells Fargo assumes that the well-pleaded factual allegations in the Complaint (but not the conclusory allegations) are true. *See, e.g., Hughes v. Cedar Rapids, Iowa*, 840 F.3d 987, 994 (8th Cir. 2016) (citing *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009)). The Court may also consider matters of public record and matters "'incorporated by reference or integral to the claim'" without converting the motion into one for summary judgment. *Williams v. Employers Mutual Cas. Co.*, 845 F.3d 891, 903-04 (8th Cir. 2017) (citations omitted).

The Property

In January 2015, Plaintiffs Samuel and Eunice Zean purchased a house in Brooklyn Park.[1] It is undisputed that (1) Wells Fargo has serviced Plaintiffs' mortgage loan ever since they bought the house, and (2) the mortgage was assigned to Wells Fargo on March 13, 2017.[2]

Plaintiffs' Escrow Account

In January 2016, Plaintiffs received a document entitled "Escrow Account Disclosure Statement and Notice of New Mortgage Payment," which required Plaintiffs to pay a projected escrow deficiency of $502.35 or else their monthly mortgage-loan payment would increase.[3] In March 2016, Plaintiffs received another Escrow Account Disclosure Statement and Notice of New Mortgage Payment, requiring them to pay an additional $456.46 or else their monthly mortgage loan payment would increase.[4] Plaintiffs assert that they are a family of modest income, and that they were concerned about the repeated demands for additional escrow funds, so they contacted Wells Fargo to

---

[1] Amended Complaint ¶ 9. *See also* Wells Fargo's Appendix, attached hereto, Ex. A (Mortgage).
[2] *See* Wells Fargo's Appendix Ex. B (Assignment of Mortgage).
[3] Amended Complaint ¶¶ 15-16.
[4] *Id.* ¶¶ 18-19.

convey their desire for a consistent mortgage payment.[5] Plaintiffs allege that they entered into a "verbal agreement and contract" with Wells Fargo whereby they would pay an escrow shortage amount of $456.46 and would "buy down" their escrow account in the amount of $680.24 to ensure that their mortgage loan payment would remain at or below $1,433.95 until March 2017.[6] According to Plaintiffs, Wells Fargo was supposed to hold the buydown amount of $680.24 and allocate one twelfth of it to Plaintiffs' escrow account each month until March 2017.[7] Plaintiffs allege that Wells Fargo assured them that it would not perform any additional escrow adjustments.[8] Plaintiffs paid Wells Fargo the escrow shortage amount and the buydown amount on March 21, 2016.[9]

In July 2016, Wells Fargo increased Plaintiffs' mortgage payment by about $62—to $1,496.85—and withdrew that sum from their bank account, causing an overdraft in the account for which Plaintiffs were assessed a fee.[10]

In September 2016, Plaintiffs received another Escrow Account Disclosure Statement and Notice of New Mortgage Payment, notifying them of the already increased mortgage payment amount of $1,496.85 to cover a predicted escrow shortfall due to an increase in taxes.[11] Enclosed with the Notice was a check for $330.05 for an escrow overage amount.[12] Plaintiffs informed Wells Fargo that the increased payment violated

---

[5] *Id.* ¶¶ 20-21.
[6] *Id.* ¶¶ 22-23.
[7] *Id.* ¶ 25.
[8] *Id.* ¶ 26.
[9] *Id.* ¶ 27.
[10] *Id.* ¶¶ 30-32.
[11] *Id.* ¶¶ 33, 36, 43.
[12] *Id.* ¶ 34.

the parties' oral buydown agreement, and questioned the reason for the escrow increase because their taxes were identical to what they paid in 2015.[13] Wells Fargo later stated that the shortfall was due to an insurance premium increase, but Plaintiffs dispute that contention.[14]

<u>The Automatic Withdrawals</u>

In September 2016, Plaintiffs notified Wells Fargo that they had only authorized an automatic withdrawal for their monthly mortgage payment in the amount of $1,433.95, not $1,496.85.[15] Wells Fargo allegedly assured Plaintiffs that it would not withdraw the higher amount in the future, but Wells Fargo withdrew the higher amount in October 2016 anyway, causing another overdraft in Plaintiffs' account for which they were assessed a fee.[16] Plaintiffs assert that when they complained about the automatic withdrawal, Wells Fargo told them that it had sent them a letter in July advising them that it was unilaterally adjusting their monthly electronic withdrawals.[17] Plaintiffs say they did not receive the July letter.[18] Wells Fargo made another automatic withdrawal of the higher amount in November 2016, again causing a deficiency in Plaintiffs' account, so Plaintiffs removed the autopay feature in December 2016.[19]

<u>The Subsequent Mortgage Loan Payments</u>

---

[13] *Id.* ¶ 41, 44.
[14] *Id.* ¶¶ 45-46.
[15] *Id.* ¶ 51.
[16] *Id.* ¶¶ 52-54.
[17] *Id.* ¶¶ 56, 58.
[18] *Id.* ¶ 62.
[19] *Id.* ¶¶ 63-64, 66.

In December 2016, Plaintiffs unilaterally began making what they viewed as the "agreed" mortgage payment of $1,433.95, rather than the $1,496.85 that Wells Fargo told them they owed each month.[20] Wells Fargo told Plaintiffs that it would not consider that full payment for the month until Plaintiffs paid the additional $62.90, and would consider them delinquent.[21] Plaintiffs continued to pay the lower amount each month. Wells Fargo used a portion of each monthly payment to cure the $62.90 arrearage from the prior month.[22] Thus, Wells Fargo continues to consider Plaintiffs delinquent on their loan payments, as Plaintiffs are not paying the full amount due each month. Plaintiffs allege that Wells Fargo is failing to credit their payments appropriately.

The Meeting with a Wells Fargo Banker

On June 28, 2017, Mr. Zean, who is the treasurer of his church, met with a Wells Fargo banker regarding the church's bank account.[23] When the banker pulled up the church accounts, a message displayed on the banker's computer screen that Mr. Zean's mortgage was in default.[24] Mr. Zean alleges that the computer screen was "highly visible" and that was embarrassed by the display of what he labels "false, private information," which he asserts was seen by the Wells Fargo's employee and other

---

[20] *Id.* ¶ 67.
[21] *Id.* ¶ 69.
[22] *See generally id.* ¶¶ 71-85.
[23] *Id.* ¶ 108.
[24] *Id.* ¶ 109.

unspecified people in the branch office that day.[25] Mr. Zean alleges that the disclosure was defamatory.[26]

* * * * *

Plaintiffs assert 18 legal claims against Wells Fargo. Wells Fargo moves to dismiss nine of them: negligence (Count 2), unjust enrichment (Count 3), fraud (Count 4), breach of contract (Count 5), violation of the Minnesota Consumer Fraud Act (Count 7), violation of the Minnesota Homeowner Bill of Rights (Count 8), invasion of privacy—publication of private facts (Count 15), and violation of the Real Estate Settlement Procedures Act (Count 16).

## Argument

Nine of Plaintiffs' 18 claims against Wells Fargo fail from the get-go either because they lack standing to pursue them, they fail as a matter of law, or they fail because Plaintiffs have not pleaded sufficient facts under *Iqbal* and *Twombly* or Fed. R. Civ. P. 9(b) to support them.

The Court is well familiar with the *Iqbal-Twombly* standard. A plaintiff's complaint must contain "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). A complaint that pleads a merely "conceivable" claim is insufficient. *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

---

[25] *Id.* ¶ 110.
[26] *Id.* ¶ 111.

of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.' To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

1. **There is no duty of care owed in a mortgagor/mortgagee relationship, thus Plaintiffs' negligence claim (Count 2) fails as a matter of law.**

To succeed on their negligence claim, Plaintiffs must prove "(1) the existence of a

duty of care, (2) a breach of that duty, (3) an injury, [and] (4) that the breach of the duty

of care was a proximate cause of the injury." *Domagala v. Rolland,* 805 N.W.2d 14, 22

(Minn. 2011). It is undisputed that the relationship between Plaintiffs and Wells Fargo is

that of mortgagor/mortgagee.[27] As a matter of law, there is no duty of care in a

mortgagor/mortgagee relationship. *See Roers v. Countrywide Home Loans, Inc.,* 728 F.3d

832, 837–38 (8th Cir. 2013). This means that Plaintiffs' cannot demonstrate the first

element of their claim—the existence of a duty of care—and without proof of a duty

owed to them by Wells Fargo, their negligence claim fails.

---

[27] *See* Wells Fargo Appendix, Exhibits A and B (Mortgage and Assignment of Mortgage), attached hereto, which the Court may consider without converting this motion to dismiss to a motion for summary judgment because they are matters of public record. *Williams*, 845 F.3d at 903-04.

The Eighth Circuit discussed this issue in *Roers*. The Roerses claimed that Countrywide negligently misrepresented facts in connection with their purchase of land. They alleged that Countrywide told them that some of the land could be subdivided and sold to satisfy Ms. Roers's debts. In affirming judgment in favor of Countrywide on the negligent-misrepresentation claim, the Eighth Circuit pointed out that "the general rule in Minnesota is that 'lenders bear no fiduciary duty to borrowers.'" *Id*. at 838 (quoting *Ming'ate v. Bank of Am., N.A.*, No. 11-1787, 2011 WL 4590431, at *5 (D. Minn. Sept. 30, 2011) (applying Minnesota law)). *See also Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 623 (Minn. 1972) (same). The Eighth Circuit concluded that the Roerses had insufficient evidence that Countrywide had a "special relationship" with them beyond a typical lender-borrower relationship, and therefore that Countrywide owed no duty of care to the Roerses under Minnesota Law. *Roers,* 728 F.3d at 838; *see also Berger v. Nationstar Mortg. LLC*, 118 F. Supp. 3d 1121, 1126 (D. Minn. 2015) (holding that mortgagee bank did not have an independent duty of reasonable care when transferring mortgagor's mortgage Loan Modification to new mortgagee, and therefore mortgagor's negligence claim was not plausible on its face); *Kichler v. Wells Fargo Bank, N.A.*, No. 12–cv–1206 (JRT/AJB), 2013 WL 4050204, at *4 (D. Minn. Aug. 9, 2013) (dismissing borrowers' negligent-misrepresentation claim alleging that the lender breached its common-law duty to accurately disclose loan terms).

So too here. Plaintiffs' negligence claim is limited solely to Wells Fargo's role as servicer of the mortgage loan.[28] They allege that Wells Fargo had a duty to "keep reasonable records," to "accurately investigate customer disputes," to accurately report the amount due, to collect only what was owed on the account, and to "maintain reasonable records."[29] What is plainly lacking are any allegations that, for example, Plaintiffs sought investment advice from Wells Fargo that gave rise to a fiduciary duty. Instead, all of the functions identified by Plaintiffs are the essence of a typical borrower-lender relationship and nothing more. Plaintiffs cannot establish the existence of a duty owed to them by Wells Fargo, a required element, so their negligence claim fails as a matter of law.

## 2. Plaintiffs' claim for unjust enrichment (Count 3) must be dismissed.

Plaintiffs' unjust-enrichment claim is based on their allegation that Wells Fargo "knowingly withdrew a sum greater than the agreed mortgage payment from Mr. Zean's checking account," "took money from Plaintiffs' account without proper authority," and "was enriched."[30] The claim fails for two fundamental reasons.

First, it is elementary in Minnesota that unjust enrichment "does not apply when there is an enforceable contract that is applicable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012); *see also Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn. 1984) ("[b]ecause there was an express contract in this case, the trial court's award of compensation under . . . an unjust enrichment theory . . . was contrary to

---

[28] *See* Amended Complaint ¶ 124.
[29] *See id*. ¶¶ 125-129.
[30] Amended Complaint ¶¶ 135 – 137.

well-established Minnesota law."). Plaintiffs' unjust enrichment claim is premised on mortgage loan and escrow payments withdrawn from their account in connection with their *mortgage contract*—an express contract, obviously. Because it is undisputed that the mortgage is an enforceable contract, Plaintiffs cannot assert an unjust-enrichment claim as a matter of law.

Second, even if plaintiffs could pursue an unjust-enrichment claim, they would have to establish that Wells Fargo was actually "enriched."  But according to their own allegations, the payments by which they claim Wells Fargo was enriched were for an *escrow deficiency—i.e.*, a shortfall in the balance that they were required to maintain so that Wells Fargo could *pay their taxes and interest on their behalf*. (*See* Complaint ¶¶ 15-16, 23, 36.) There is no allegation that Wells Fargo retained any of the money for itself. Payment of money that a borrower legally owes is not unjust enrichment as a matter of law. *See, e.g., Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 853–54 (8th Cir. 2014); *Bohnhoff v. Wells Fargo Bank, N.A.,* 853 F.Supp.2d 849, 857 (D. Minn. 2012). And plaintiffs admit that Wells Fargo fully reimbursed them when their escrow account balance was *too much*. (Complaint ¶¶ 33-35.) Thus, at worst, plaintiffs have alleged that Wells Fargo did a bad job estimating what their monthly tax and insurance payments would be, and thus what amount they needed to keep in their escrow account. But none of that enriched Wells Fargo because Wells Fargo never kept the money. Thus, Plaintiffs have failed to state a viable unjust-enrichment claim even if the law allowed them to pursue such a claim.

### 3.  Plaintiffs have failed to state a claim for fraud (Count 4).

To prove fraud, Plaintiffs must show:

> (1) a false representation [by the defendant] of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [the other party] to act in reliance thereon; (4) that the representation caused [the other party] to act in reliance thereon; and (5) that [the other party] suffered pecuniary damages as a result of the reliance.

*Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). And as the Court well knows, a claim for fraud must pled with particularity under Fed. R. Civ. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *U.S. ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted).

Plaintiffs allege three misrepresentations, but they fail to do so with specificity, as Rule 9(b) requires. First they allege that Wells Fargo fraudulently offered them a consistent mortgage statement until March 2017 in exchange for a one-time payment,[31] but they fail to allege <u>when</u> the offer was made, <u>who</u> at Wells Fargo made it, or <u>where</u> the offer was made. Next, Plaintiffs allege that in September 2016, Wells Fargo fraudulently told them it would not make a second automated withdrawal in the amount of

---

[31] *See* Amended Complaint ¶¶ 22-23, 139.

$1,496.85.[32] Again, they do not explain <u>who</u> made the statement, <u>where</u> it was made, or <u>how</u> it was made. (Moreover, earlier allegations in Plaintiffs' Amended Complaint contradict this alleged second fraudulent statement. Plaintiffs allege that in September 2016, *they* told Wells Fargo that they did not authorize an automatic withdrawal, but they say nothing about what, if anything, Wells Fargo said to them.[33]) Finally, Plaintiffs allege that in October 2016, Wells Fargo fraudulently told them it would not make an automated withdrawal in the amount of $1,496.85.[34] And once again, Plaintiffs fail to allege <u>who</u> at Wells Fargo made the statement, <u>where</u> the statement was made, or <u>how</u> the statement was made.

Because Plaintiffs failed to allege who made the alleged statements, or when, where, and how they were made, their fraud claim does not satisfy the requirements of Rule 9(b), which is "intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). *See also ADT Security Servs., Inc. v. Swenson*, No. CIV. 07-2983 JRT/AJB, 2008 WL 2828867, at *4 (D. Minn. July 21, 2008) (dismissing fraud claim because counterclaimants alleged merely that ADT made the statements rather than the individual(s) who allegedly engaged in the fraudulent communications, and finding the "on or about" dates insufficient to specify the time and place where each allegedly fraudulent act took place).

---

[32] *See id.* ¶ 145.
[33] *See id*. ¶¶ 48-50.
[34] *See id.* ¶¶ 52, 149.

**4.    Plaintiffs do not have a breach-of-contract claim (Count 5) because the alleged verbal buydown agreement does not satisfy the credit-agreement statute of frauds in Minn. Stat. § 513.33.**

Plaintiffs assert a breach-of-contract claim against Wells Fargo based on an alleged "verbal agreement and contract."[35] They allege that someone from Wells Fargo verbally promised them that if they "bought down" their escrow account, Wells Fargo would allocate one twelfth of the "buydown" amount to their escrow account each month for a one-year period so that their mortgage payment would never exceed $1,433.95, and that Wells Fargo would make any additional escrow adjustments during that timeframe.[36] Even assuming these allegations as true, Plaintiffs cannot enforce the alleged "verbal agreement and contract" because it does not satisfy Minnesota's credit-agreement statute of frauds, Minn. Stat. § 513.33.

The credit-agreement statute of frauds applies to any "agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Minn. Stat. § 513.33, subd. 1(1). Such an agreement is enforceable only if it is "in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subd. 2. As the Minnesota Supreme Court recently confirmed, "[t]he text of section 513.33 is plain, clear, and unambiguous—no action on a credit agreement may be maintained unless the writing requirement is satisfied." *Figgins v. Wilcox*, 879 N.W.2d 653, 659 (Minn. 2016).

---

[35] Amended Complaint ¶ 23.
[36] *See id.* ¶¶ 22-28.

Plaintiffs expressly allege that the basis of their breach-of-contract claim is a "verbal agreement and contract" that would have adjusted the amounts they paid both on their mortgage and into their escrow account. That is a "financial accommodation" within the meaning of the statute. In *Rural American Bank of Greenwald,* the Minnesota Supreme Court held that an agreement between two farmers and their lender bank that proceeds would be used to pay off one farmer's loan before the other was a "financial accommodation" under the statute. 485 N.W.2d 702, 705–06. In so holding, the Court declined to limit the meaning of "financial accommodation" only to accommodations in the nature of lending or forbearance agreements or other agreements for the extension of credit. *Id.* More recently, the supreme court held that a verbal agreement was a "financial accommodation" within the ambit of § 513.33 where the lender purportedly told the borrower that it was unnecessary to make a balloon payment on an outstanding loan while the parties negotiated refinancing the loan. *Figgins*, 879 N.W.2d at 658. And in *Pako Corp. v. Citytrust,* the court held that an alleged oral agreement giving defendant the right to compel an assignment amounted to a "financial accommodation" because it was "an oral aspect of the underlying credit agreement." 109 B.R. 368, 377 (D. Minn. 1989).

Because the alleged agreement at issue is a "financial accommodation," the writing requirement of § 513.33 applies. And because the alleged agreement is indisputably *not* in writing, Plaintiffs cannot enforce it under § 513.33. Their breach-of-contract claim on this score therefore fails to state a claim.

14

5.  **There is no private right of action under the Minnesota Consumer Fraud Act (Count 7).**

Plaintiffs assert under the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.*, alleging that Wells Fargo made "false statements in the connection with the sale of merchandise, namely the sale of escrow buydowns."[37] This claim fails because Plaintiffs have no private right of action under the Consumer Fraud Act in these circumstances.

Private parties can assert a claim under the Consumer Fraud Act only if they "demonstrate that their cause of action benefits the public." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). When a plaintiff's alleged injury is based on a "single one-on-one transaction" involving only the plaintiff, his claim "does not advance state interests and enforcement has no public benefit," and he therefore cannot pursue it under the Consumer Fraud Act. *Id.* As the Eighth Circuit held in *Davis v. U.S. Bancorp*, 383 F.3d 761 (8th Cir. 2004), when the plaintiff "can complain only about her individual experience with [the defendant], and she has not presented evidence that [misconduct affected] the public at large," the plaintiff is "barred from raising her claims" under Minnesota's Consumer Fraud Act. 383 F.3d at 768; *see also Kivel v. Wealth Spring Mortgage Corp.*, 398 F. Supp. 2d 1049, 1056 (D. Minn. 2005) ("The public benefit requirement is typically not met where the alleged conduct occurs in an individualized setting because successful prosecution of such conduct would not advance the state's interests.").

---

[37] Complaint ¶ 164.

This case involves just the sort of "single one-on-one transaction" that *Ly* said "does not advance state interests" and therefore confers "no public benefit." *Ly*, 615 N.W.2d at 314. Just as in *Davis*, Plaintiffs" can complain only about [their] individual experience with [Wells Fargo], and [they have] not presented evidence that [misconduct affected] the public at large." 383 F.3d at 768. Thus, Plaintiffs' claim does not meet the public-benefit requirement, and they fail to state a viable claim under the Consumer Fraud Act.

### 6. Plaintiffs have no claim under the Minnesota Homeowner Bill of Rights (Count 8) because Plaintiffs' mortgage was not and is not presently subject to foreclosure.

Plaintiffs purport to bring a claim against Wells Fargo under the Minnesota Homeowner Bill of Rights, Minn. Stat. § 582.043.[38] They allege that their request to buy down their escrow account constituted a "loan modification or other loss mitigation option," making such a request subject to the requirements of § 582.043.[39] But even if Plaintiffs' buy down of their *escrow account* constituted a "loan modification or other loss mitigation option" under the statute (a doubtful proposition), their claim fails for a more fundamental reason: § 582.043 by its terms "applies only to first lien mortgages *subject to foreclosure*...." Minn. Stat. § 582.043, subd. 2 (emphasis added). In fact, the only relief available for a violation of § 582.043 is to enjoin or set aside a foreclosure sale. *See id*., subd. 7; *Gretsch v. Vantium Capital, Inc.*, 846 N.W.2d 424, 431 (Minn.

---

[38] *See* Amended Complaint ¶¶ 169-182.
[39] *Id*. ¶¶ 172-173.

2014) ("Minn.Stat. § 582.043 provides only for an injunction or the setting aside of a foreclosure sale, not damages or other remedies.").

Plaintiffs do not allege that their mortgage loan was in foreclosure or that a foreclosure sale was scheduled. They do not allege that a foreclosure sale took place. That is because, as a matter of public record, foreclosure proceedings have not commenced. It is undisputed that Plaintiffs' mortgage is not subject to foreclosure and there is no foreclosure sale to enjoin or set aside. Therefore, § 582.043 does not apply by its own terms, and Plaintiffs' claim under that statute fails as a matter of law and should be dismissed.

**7. Plaintiffs do not allege facts demonstrating that Wells Fargo gave "publicity" to their private matters and thus have failed to state a claim for invasion of privacy – publication of private facts (Count 15).**

To state a claim for invasion of privacy—publication of private facts, a plaintiff must demonstrate that one "'gives publicity to a matter concerning the private life of another * * * if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998) (quoting Restatement (Second) of Torts § 652D). In *Lake*, the Minnesota Supreme Court did not define what was meant by "publicity," but it did so five years later. *See Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003). In *Bodah*, the Court adopted the Restatement's definition of "publicity"—*i.e.*, that "'the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to

become one of public knowledge.'" *Id.* at 557 (quoting Restatement (Second) of Torts § 652D cmt. a.).

Plaintiffs' claim for invasion of privacy—publication of private facts should be dismissed because they have failed to allege "enough facts to state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Specifically, they do not plead any facts showing that Wells Fargo gave "publicity" to a matter concerning their private life. While Plaintiffs allege that when they met with a Wells Fargo banker, a message displayed on the banker's "highly visible computer screen" that their mortgage was in default,[40] and that other unnamed individuals in the bank "could see . . . that Plaintiffs were delinquent in paying their mortgage,"[41] these allegations do not come close to satisfying the "publicity" element. A message displayed on *one* person's computer screen—even if seen by others inside of the bank—does not make the information public by communicating it to the public at large, or to so many people that it was substantially certain to become public knowledge. In fact, *much* broader broadcasts of information have been held insufficient to satisfy the publicity requirement of this tort. In *Bodah*, for example, the dissemination of 204 employees' Social Security numbers to 16 terminal managers in six states did not constitute publication to the public or to so large a number of persons that the matter must be regarded as substantially certain to become public. 663 N.W.2d at 557–58. In so ruling, the court was persuaded by the holdings of numerous

---

[40] Complaint ¶ 109.
[41] *Id.* ¶ 251.

other courts that held that broader communications than the one alleged by Plaintiffs here did not constitute "publication." *Id.* (collecting cases).

And courts within this District have come to the same conclusion when assessing dissemination of information far more extensive than the one alleged by Plaintiffs here. *See, e.g. Sherr v. HealthEast Care Sys.,* No. CV 16-3075 ADM/LIB, 2017 WL 2838121, at *8 (D. Minn. June 30, 2017) (dismissing invasion of privacy claim for failure to state a claim where the plaintiff alleged that private facts were disclosed to the "larger neurosurgery community."); *Parniani v. Cardinal Health, Inc.*, No. 06-2514 PJS/JJG, 2007 WL 2219373, at *6 (D. Minn. June 29, 2007), report and recommendation adopted in part, No. 06-CV-2514 PJS/JJG, 2007 WL 2219368 (D. Minn. July 27, 2007), *aff'd*, 305 F. App'x 301 (8th Cir. 2008) (plaintiff did not state a claim because she did not allege that the defendants published information about her to the public at large); *Cohen v. Beachside Two-I Homeowners' Ass'n*, No. CIV. 05-706 ADM/JSM, 2005 WL 3088361, at *16–17 (D. Minn. Nov. 17, 2005) (mailing meeting minutes to members of the Beachside community comprised of fifty households in a small geographic area did not satisfy the publicity element).

Under all of these cases, it is plain that a message that was displayed by Wells Fargo on one Wells Fargo employee's computer screen, even if seen by others who happened to be near the computer screen at that moment, is not a "publication" that can support a claim for invasion of privacy—publication of private facts. Plaintiffs therefore have failed to state a claim upon which relief can be granted.

**8.   There is no private right of action under § 2609 of RESPA (Count 16).**

In Count 16 of the Complaint, Plaintiffs allege that Wells Fargo violated the Real

Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2609, by demanding escrow

funds in excess of the amount allowed, by confiscating an escrow overage refund owed to

Plaintiffs, and by not properly allocating Plaintiffs' mortgage payments.[42] Once again,

Plaintiffs have no private right of action to assert such a claim.

Section 2609(d)[43] provides (with emphasis added):

> In the case of each failure to submit a statement to a borrower as
> required under subsection (c) of this section, *the Secretary shall
> assess to the lender or escrow servicer* failing to submit the
> statement a civil penalty of $50 for each such failure, but the total
> amount imposed on such lender or escrow servicer for all such
> failures during any 12-month period referred to in subsection (b) of
> this section may not exceed $100,000.

A majority of federal circuits to have decided the issue have held that § 2609 is

enforceable only by the Secretary of Housing and Urban Development, and that there is

no private right of action for an alleged violation. *See Hardy v. Regions Mortg., Inc.*, 449

F.3d 1357, 1360 (11th Cir. 2006); *State of La. v. Litton Mortg. Co.*, 50 F.3d 1298, 1301–

02 (5th Cir. 1995); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1091 (7th Cir. 1982). *Cf. Vega

v. First Fed. Sav. & Loan Ass'n of Detroit*, 622 F.2d 918, 925 n.8 (6th Cir. 1980) (private

right of action exists). A court in this District reached the same conclusion in *Michels v.

Resolution Tr. Corp.*, No. CIV. 4-93-1167, 1994 WL 242162, at *4 (D. Minn. Apr. 13,

1994), as have many other federal district courts. *See, e.g., McWilliams v. Chase Home*

---

[42] Amended Complaint ¶¶ 252-255.

[43] Most of the cases refer to "section 10 of RESPA," which is codified at 12 U.S.C. §
2609.

*Fin., LLC*, No. 4:09CV609 RWS, 2010 WL 1817783, at *4 (E.D. Mo. May 4, 2010);

*McKinney v. Fulton Bank*, 776 F.Supp.2d 97, 103-04 (D. Md. 2010); *Sarsfield v.*

*Citimortgage, Inc.*, 667 F.Supp.2d 461, 468 (M.D. Pa. 2009); *McAnaney v. Astoria*

*Financial Corp.*, 357 F.Supp.2d 578, 591 (E.D.N.Y. 2005); *Campbell v. Machias Sav.*

*Bank*, 865 F.Supp. 26, 31 (D. Me. 1994). And while the Eighth Circuit has not directly

ruled on the issue, it favorably cited the Seventh Circuit's decision in *Allison* when

determining that appellants—members of a class action who objected to approval of the

class-action settlement—had "a strong ***un***likelihood of success on the merits" of their

claim under section 2609 because plaintiffs "may not have even had a legitimate federal

cause of action." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995)

(emphasis added).

        This Court should follow the overwhelming majority of courts and hold that

Plaintiffs have no private right of action to assert a claim under section 2609 of RESPA,

and tha the claim must be dismissed.

## Conclusion

        Wells Fargo respectfully asks the Court to dismiss Counts 2, 3, 4, 5, 7, 8, 15, and

16 of the Amended Complaint with prejudice.

Dated: October 10, 2017                    s/ Jessica Z. Savran
                                           Charles F. Webber (#215247)
                                           Jessica Z. Savran (#348983)
                                           Attorneys for Defendant
                                              Wells Fargo Bank, N.A.
                                           FAEGRE BAKER DANIELS LLP
                                           2200 Wells Fargo Center
                                           90 South Seventh Street
                                           Minneapolis, MN 55402-3901
                                           Telephone: (612) 766-7000
                                           Fax: (612) 766-1600
                                           chuck.webber@FaegreBD.com
                                           [mailto:chuck.webber@FaegreBD.com](mailto:chuck.webber@FaegreBD.com)je
                                           ssica.savran@FaegreBD.com